UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN F. CHASE, | ) |
| | ) |
|     Plaintiff | ) |
| v. | )    No. 2:18-cv-00165-NT |
| | ) |
| ARTHUR MERSON, et al., | ) |
| | ) |
|     Defendants | ) |

*MEMORANDUM DECISION AND ORDER ON MOTION TO EXTEND TIME FOR SERVICE OF PROCESS AND TO AUTHORIZE SERVICE BY PUBLICATION*

The plaintiff, John F. Chase, moves for authorization to serve by publication five of the 10 defendants herein and for an additional 90 days to complete service. *See* Motion To Extend Time for Service of Process and To Authorize Service by Publication ("Motion") (ECF No. 37) at 1. Chase proposes to serve defendants Arthur Merson and Endeavor Project Consultants, LLC in *The Arizona Republic*; Don Patch in the *Portland Press Herald* and *The Arizona Republic*; and Russell Hearld and Stellar Enterprises, Inc. in the *Houston Chronicle*. *See id.* at 5. For the reasons that follow, I grant the Motion insofar as the plaintiff requests a deadline extension, enlarging his deadline to serve process by 90 days to October 16, 2018, but, deny the Motion without prejudice on the showing made, insofar as he requests service by publication.

**I. Request To Extend Time**

Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

1

The plaintiff filed his complaint on April 19, 2018, *see* Complaint (ECF No. 1), and filed the instant motion on July 13, 2018, *see* ECF No. 37, five days prior to the expiration of his deadline to serve process on July 18, 2018. While, for the reasons discussed below, I conclude that he falls short of making the showing necessary to warrant service by publication, I find good cause for the requested 90-day extension based on his efforts thus far to serve the remaining defendants, his timely filing of the instant request for an extension of time, and the possibility that, with further effort, he may yet be able to locate one or more of the five defendants or make the required showing for service by publication. Hence, I grant the motion insofar as it requests a 90-day extension of time to serve process, extending that deadline to October 16, 2018.

## II. Request for Service by Publication

### A. Applicable Legal Standard

"Under Federal Rule of Civil Procedure 4(e), service may be accomplished by delivering a copy of the summons and the complaint to the individual personally, leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, [or] delivering a copy to an agent authorized by appointment or by law to receive service of process[.]" *Edson v. Riverside Psychiatric Ctr.*, No. 1:16-cv-00079-JAW, 2016 WL 3257003, at *2 (D. Me. June 13, 2016); Fed. R. Civ. P. 4(e)(2). Service may also be accomplished "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district [court] is located or where service is made." *Edson*, 2016 WL 3257003, at *2; Fed. R. Civ. P. 4(e)(1).

Maine law allows service by publication "on motion upon a showing that service cannot with due diligence be made by another prescribed method[.]" Me. R. Civ. P. 4(g). To meet that standard, the movant must provide an affidavit showing that (i) the movant "has demonstrated due

2

diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute[,]" (ii) "[t]he identity and/or physical location of the person to be served cannot reasonably be ascertained, or is ascertainable but it appears the person is evading process[,]" and (iii) "[t]he requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1).

The plaintiff provides an affidavit of his attorney, Benjamin S. Piper, Esq., in support of his argument that, despite duly diligent efforts, he could not reasonably ascertain the location of any of the five defendants, warranting the grant of his request for service by publication. *See* Motion at 5-6; Declaration of Benjamin S. Piper ("Piper Decl.") (ECF No. 37-1), attached thereto.[1] He contends that, in *Gaeth v. Deacon*, 2009 ME 9, 964 A.2d 621, the Law Court made clear that due diligence "is to be measured by a reasonableness or practicality standard." Motion at 4. He notes that the Law Court observed, "[N]otice by publication is adequate . . . where it is not reasonably possible or practicable to give more adequate warning." *Id*. (quoting *Gaeth*, 2009 ME 9, ¶ 24, 964 A.2d at 627) (citation and internal quotation marks omitted).

However, this downplays the extent of the concern expressed by the Law Court in *Gaeth* regarding notice by publication. As the Law Court noted, "The purpose of the rule regarding service is to achieve due process by giving sufficient notice of civil actions." *Gaeth*, 2009 ME 9, ¶ 27, 964 A.2d at 628. In the passage quoted by the plaintiff, it stated:

> The Supreme Court has stated that "[c]hance alone brings a person's attention to an advertisement in small type inserted in the back pages of a newspaper and that notice by publication is adequate *only* where it is not reasonably possible or practicable to give more adequate warning."

---

[1] The plaintiff makes a passing comment that his inability to locate the five defendants "is perhaps not unrelated to their propensity for engaging in the conduct described in [his] complaint[.]" Motion at 3. However, he neither argues, nor attempts to show, that any of those defendants appears to be evading service of process. *See generally id*.

*Id.*, 2009 ME 9, ¶ 24, 964 A.2d at 627 (citation and internal quotation marks omitted) (emphasis added).

The Law Court observed that, as a result of societal and technological changes, "service by publication has become less likely to achieve actual notice of a lawsuit" and, therefore, "also less likely to meet the requirements of due process." *Id.*, 2009 ME 9, ¶ 26, 964 A.2d at 628. As such, it stated, "service by publication in a newspaper is now a last resort that a party should attempt only when it has exhausted other means more likely to achieve notice." *Id.*

The plaintiff notes that, in *Edson*, this court made clear that, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Motion at 5 (quoting *Edson*, 2016 WL 3257003, at *3) (citation and internal quotation marks omitted).

However, in *Edson*, this court was persuaded that the defendant's "physical location [could not] reasonably be ascertained" in circumstances in which the plaintiff's "extensive efforts" included (i) "search[ing] various social media websites; public records databases; and Maine government websites" and attempting to make telephone contact with the defendant, (ii) retaining two sheriff's offices to locate and serve the defendant, and (iii) hiring a private investigator "to conduct a public records search, obtain potential addresses for [the defendant] and travel to those [seven] addresses in an effort to serve [her][.]" *Edson*, 2016 WL 3257003, at *1, 3.

By contrast, this court has denied motions for service by publication on the basis of an insufficient showing of due diligence when a moving party failed to show that it had taken "even simple steps . . . such as contacting the defendant's former landlord, the defendant's brother or his brother's guardian, or engaging a private investigator" and had failed to specify "what 'internet

4

searches' it undertook or what 'acquaintances' it contacted and when[,]" *Camden Nat'l Bank v. Reid*, No. 2:13-cv-376-DBH, 2014 WL 1320944, at *2 (D. Me. March 28, 2014), and when "[a] number of avenues [did] not appear to have been exhausted[,]" such as contacting utility companies and querying whether any forwarding address had been left with the Postal Service, *MATSCO v. Brighton Family Dental, P.C.*, 597 F. Supp.2d 158, 162 (D. Me. 2009).

For the reasons that follow, I conclude that the plaintiff, as well, has left avenues unexhausted, falling short of making a sufficient showing of due diligence in attempting to locate each of the five defendants. As in *MATSCO*, I do not mean to suggest that specific actions are "ironclad prerequisites in an immutable list of steps to be undertaken" but, rather, that "something more than has been shown must be shown . . . in order to comply with the Law Court's explication of due process in this context." *Id.*

## B. Discussion

Because the plaintiff is attempting to serve five defendants and the facts differ as to each, I analyze his attempts at locating and serving the defendants separately below. Merson and his company, Endeavor, are treated together, as are Hearld and his company, Stellar. Patch is considered on his own.

### 1. Arthur Merson and Endeavor Project Consultants

Attorney Piper describes the plaintiff's efforts to locate and serve Merson and Endeavor as follows:

1. Attorney Piper retained All About Serving, a process server in Chandler, Arizona, to serve Merson and Endeavor at the Chandler, Arizona, address listed with the Arizona Corporation Commission ("ACC") for Merson as statutory agent of Endeavor, 1930 W. Watermark Drive, Chandler, Arizona. Piper Decl. ¶ 2. The process server confirmed that Merson

5

and Endeavor were no longer at that address. *Id.* ¶ 3. The ACC provided an old address for Endeavor in Tempe, Arizona, but an online Yellow Pages search revealed that Merson and Endeavor were no longer at that address. *Id.* ¶ 4; Exh. B (ECF No. 37-3) thereto.

    2.    Through ASAP Serve Process Servers in Mesa, Arizona, Attorney Piper attempted to serve Merson and Endeavor at "an updated address [in Phoenix, Arizona] from internet research." Piper Decl. ¶ 5. The process server's notes indicated that he attempted service twice: on May 11, 2018, at which time he spoke to the current occupant, who said that he sometimes still received mail for Merson, and on May 21, 2018, at which time the occupant stated that he had been at that address for a year and did not know Merson. *Id*. During the second visit, the process server also spoke to a next-door neighbor who had no information as to Merson's whereabouts. *Id.*

    3.    Attorney Piper conducted an internet search of the Maricopa County Recorder's office for properties associated with Merson. *Id*. ¶ 6. The search indicated that Merson had sold the Watermark Drive property by trustee's sale in 2011, and the Notice of Trustee's Sale "suggested that Mr. Merson and his wife had moved to Albuquerque, New Mexico." *Id.* Attorney Piper searched the website of the County Clerk of Bernalillo County, New Mexico, and found that Merson had purchased "land in Albuquerque in 1997, but [the website] did not provide an address associated with the land." *Id.* ¶ 7.

Despite these efforts, the plaintiff left open several leads in his attempt to locate Merson and Endeavor. For example, when the process server attempted service at the Watermark Drive property in Chandler, Arizona, he noted that the current resident of that property "still receive[d] mail from time to time and that the police came to her home looking for [Merson] approximately six months [prior]." Exh. A (ECF NO. 37-2) to Piper Decl. at Page ID # 423. The plaintiff

apparently failed to contact the Chandler police department, search for criminal history records, or ask about a forwarding address.

The plaintiff, likewise, did not inquire about a forwarding address for the Phoenix, Arizona, property whose current occupant also received mail for Merson. In addition, although the process server noted that the Phoenix property had been owned by Courtney Meyer since 2006, *see* Exh. C (ECF No. 37-4) to Piper Decl. at Page ID # 439, the plaintiff apparently did not follow up with Meyer. If Merson lived at the property in the past dozen years, Meyer presumably would have been his landlord and might have had contact information or information about his whereabouts.

The plaintiff apparently also did not attempt to contact Merson's wife or other persons connected with Endeavor. The complaint indicates that co-defendant Keith Roy, who was successfully served, *see* ECF No. 7, had dealings with Merson and Endeavor, *see* Complaint ¶¶ 25, 30, 32, 37. In light of the plaintiff's allegation in his complaint, dated April 19, 2018, that "Merson continues to make representations *to this day* that payment will be coming any day[,]" Complaint ¶ 57 (emphasis added), it is curious that the plaintiff mentions no attempt to reach him at his last-known physical, email, telephone, or other address. Of note, a contract dated March 29, 2017, that the plaintiff appends to the complaint lists a cell phone number, Skype address, and email address for Merson. *See* Complaint ¶ 33; Irrevocable 17.5% Success Fee Participation & Payorder Agreement ("Success Fee Agreement"), Exh. 1 (ECF No. 1-1) thereto, at Page ID # 125.

Finally, the plaintiff did not avail himself of the services of a private investigator.

Without more, the plaintiff fails to demonstrate the exercise of due diligence in ascertaining the location of Merson and Endeavor.

## 2. Don Patch

The plaintiff represents that the following efforts have been undertaken to locate and serve Patch:

1. Attorney Piper attempted to serve Patch through the Cumberland County Sheriff's Office at his last known address in Portland, Maine. Piper Decl. ¶ 8. The sheriff's deputy who attempted service confirmed that Patch "no longer ha[d] an office there and gave a possible updated address" in Tuscon, Arizona. *Id*.

2. Attorney Piper attempted to serve Patch at the Arizona address through Arizona Quick Process Service. *Id.* ¶ 9. The process server, who attempted service on May 17, May 19, and May 22, 2018, noted that the name "Patch" was on the mailbox but that there was no answer and no activity observed at any of the three visits. *Id.* ¶ 10.

3. In June 2018, the Cumberland County Sheriff's Office unsuccessfully attempted service on Patch at two possible summer addresses, both campsites in Scarborough, Maine. *Id*. ¶¶ 11-12.

4. Through an internet search of the Cumberland County, Maine, Registry of Deeds, Attorney Piper found a Scarborough, Maine, property potentially associated with Patch. *Id*. ¶ 13. A subsequent Maine WebGiS search indicated that the property was owned by another individual. *Id.* ¶ 14.

In this instance, as well, leads were left unexplored, most notably, the fact that the Arizona property had Patch's name on the mailbox. While there was "no answer or activity observed at the address on any of three visits[,]" Motion at 2, those visits occurred over a period of only six days. It is possible that Patch was on vacation or that this was a seasonal property. Yet, no additional attempts were apparently made to confirm that this was Patch's residence and serve

process upon him. For example, although the process server indicated that the water service was on, *see* Exh. E (ECF No. 37-6) to Piper Decl. at Page ID # 446, the plaintiff apparently did not contact the water company or other utility companies to obtain a billing address.

In addition, the plaintiff alleges in his complaint that, although the Success Fee Agreement provided that Patch would sign a note and mortgage in the amount of $250,000 secured by real estate he owned in Arizona, that real estate in fact "was worth only approximately $110,000." Complaint ¶ 35. Confusingly, the Success Fee Agreement describes the Patch property as located in "Augusta." Success Fee Agreement at Page ID # 131. However, regardless of whether the property was in Augusta – presumably, Augusta, Maine – or in Arizona, the plaintiff contends that he knew its value, implying that he researched the value, in turn implying that he knew the address. Yet, the plaintiff does not mention that he attempted service at this particular Augusta or Arizona property. From all that appears, no search was made for properties associated with Patch in the Kennebec County, Maine, Registry of Deeds, the county in which Augusta is located, or in any Arizona registry of deeds.

As in the case of Merson and Endeavor, the Success Fee Agreement lists contact information for Patch, including a telephone number and an email address, *see* Success Fee Agreement at Page ID # 126, and the plaintiff alleges that he spoke with Patch by telephone in March 2017, *see* Complaint ¶ 26. However, the plaintiff describes no effort to contact Patch by these means.

Finally, as in the case of Merson and Endeavor, there is no indication that the plaintiff hired a private investigator to help locate Patch.

On these facts, the plaintiff fails to demonstrate the exercise of due diligence in ascertaining the location of Patch.

### 3. Russell Hearld and Stellar Enterprises

The plaintiff has attempted to locate and serve Hearld and Stellar as follows:

1.  Attorney Piper, through Professional Civil Process in Houston, Texas, attempted to serve Hearld and Stellar at their last known address in Houston. Piper Decl. ¶ 15. The process server noted that the current resident of that address had no knowledge of Hearld. *Id.* ¶ 16.

2.  A former girlfriend of Hearld provided Attorney Piper with two additional addresses in Sugar Land, Texas. *Id.* ¶ 17. In May 2018, service was attempted at both addresses, but neither current resident had any knowledge of Hearld. *Id.* In June 2018, Attorney Piper spoke with the same former girlfriend by telephone, and she told him that Hearld had moved to the Houston, Texas, area from California approximately a year earlier. *Id.* ¶ 18. She had no further information regarding his whereabouts, but told Attorney Piper that Hearld "tries to avoid putting purchases, including residences and vehicles, in his name." *Id.*

3.  Texas Taxable Entity Search Results for Stellar Enterprises, Inc., did not include the Stellar Enterprises, Inc., that the plaintiff is looking to serve. *Id.* ¶ 19.

Here too, the plaintiff falls short of demonstrating due diligence in his attempts to locate Hearld and Stellar. For example, he alleges that defendant Christopher M. Ochoa, a former attorney, represented Stellar and was working with Hearld in the disputed dealings, *see* Complaint ¶¶ 38-39, but does not indicate that he made an attempt to obtain their contact information from Ochoa, a seemingly logical step, *see, e.g.*, *Strategic Operations, Inc. v. Joseph*, Case No: 17cv1347-JLS (NLS), 2018 WL 3207416, at *2 (S.D. Cal. June 29, 2018) (asking an attorney about a defendant's whereabouts "would be a good step" and one that "a reasonable person who

truly desired to give notice would have taken under the circumstances") (citation and internal quotation marks omitted).[2]

And, while Hearld's former girlfriend indicated that Hearld had moved from California to Texas approximately a year earlier, the plaintiff evidently did not undertake a search for Hearld in California (including an online search) when initial attempts to find him in Texas proved futile. Such a search might, at the least, have disclosed further leads to follow in locating Hearld.

A report of Ochoa's disbarment proceedings attached to the complaint contains additional leads that the plaintiff does not indicate he pursued in the form of names or entities possibly associated with Hearld or Stellar. *See* Exh. 3 (ECF No. 1-3) to Complaint at Page ID # 161 (Ochoa's trust account withdrawal descriptions included "The Caswell Group obo Stellar Hearld," "Steel International obo Stellar/Hearld," "Stellar/Hearld Trade," and "Veronica Minet per Hearld Trade").

While the plaintiff obtained Texas Taxable Entity Search Results, he does not explain whether this database is identical to that of the Texas Secretary of State or indicate that any additional search was made specifically to locate Stellar.

Finally, the plaintiff does not indicate that he availed himself of the services of a private investigator in his effort to locate Hearld and Stellar.

Without more, the plaintiff fails to demonstrate the exercise of due diligence in ascertaining the location of Hearld and Stellar.

---

[2] Admittedly, this approach might not bear fruit in this case, the plaintiff having alleged that Ochoa was recently disbarred in the wake of an investigation into his participation in a strikingly similar scheme involving Hearld and Stellar. *See* Complaint ¶¶ 71-74, 81-82. Yet, the plaintiff does not explain either that he tried to contact Ochoa or that such contact would have been futile.

11

### III. Conclusion

For the foregoing reasons, the Motion is **GRANTED IN PART** with respect to the plaintiff's request for a 90-day extension to serve process on defendants Merson, Endeavor, Hearld, Stellar, and Patch, and otherwise **DENIED** without prejudice with respect to his request to serve those defendants by publication. The plaintiff's deadline to serve process is **ENLARGED** from July 18, 2018, to October 16, 2018.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 24th day of August, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge