UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN F. CHASE, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) No. 2:18-cv-00165-NT |
| | ) |
| ARTHUR MERSON, et al., | ) |
| | ) |
| Defendants | ) |

### MEMORANDUM DECISION AND ORDER ON SECOND MOTION TO EXTEND TIME FOR SERVICE OF PROCESS, AUTHORIZE SERVICE BY ALTERNATE MEANS

On August 24, 2018, I granted the plaintiff's request to enlarge his deadline to serve process by 90 days to October 16, 2018, but denied without prejudice, on the showing made, his motion to serve five of 10 defendants by publication. *See* Memorandum Decision and Order on Motion To Extend Time for Service of Process and To Authorize Service by Publication ("Prior Decision") (ECF No. 40) at 1. The plaintiff, who has since served two of those defendants, moves for an additional 90-day extension of his deadline to serve process and for authorization to serve process by alternate means on the remaining three, Don Patch, Russell Hearld, and Stellar Enterprises, Inc. ("Stellar"). *See* Second Motion To Extend Time for Service of Process and To Authorize Service by Alternate Means ("Second Motion") (ECF No. 43) at 1.[1] For the reasons that follow, I grant the Second Motion, extend the plaintiff's deadline to serve process by an additional 90 days to January 14, 2019, and direct that the plaintiff serve Patch, Hearld, and Stellar by the alternate means of publication, first-class mail, and email as detailed below.

---

[1] The plaintiff succeeded in serving process on defendants Arthur Merson and Endeavor Project Consultants, LLC. *See* Second Motion at 3.

1

## I. Request To Extend Time

Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

The plaintiff has shown good cause for the requested additional 90-day extension in that, despite diligent efforts to locate and serve the five defendants who were the subject of his initial motion, he was able to serve only two. Accordingly, I extend his deadline to serve process by 90 days, from October 16, 2018, to January 14, 2019.

## II. Request for Service by Alternate Means

### A. Applicable Legal Standard

"Under Federal Rule of Civil Procedure 4(e), service may be accomplished by delivering a copy of the summons and the complaint to the individual personally, leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, [or] delivering a copy to an agent authorized by appointment or by law to receive service of process[.]" *Edson v. Riverside Psychiatric Ctr.*, No. 1:16-cv-00079-JAW, 2016 WL 3257003, at *2 (D. Me. June 13, 2016); Fed. R. Civ. P. 4(e)(2). Service may also be accomplished "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district [court] is located or where service is made." *Edson*, 2016 WL 3257003, at *2; Fed. R. Civ. P. 4(e)(1).

Maine law allows service by alternate means "on motion upon a showing that service cannot with due diligence be made by another prescribed method[.]" Me. R. Civ. P. 4(g)(1). To

meet that standard, the movant must provide an affidavit showing that (i) the movant "has demonstrated due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute[,]" (ii) "[t]he identity and/or physical location of the person to be served cannot reasonably be ascertained, or is ascertainable but it appears the person is evading process[,]" and (iii) "[t]he requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." *Id*.

The Law Court has observed that, because of societal and technological changes, "service by publication has become less likely to achieve actual notice of a lawsuit" and, therefore, "also less likely to meet the requirements of due process." *Gaeth v. Deacon*, 2009 ME 9, ¶ 26, 964 A.2d 621, 628. As such, it stated, "service by publication in a newspaper is now a last resort that a party should attempt only when it has exhausted other means more likely to achieve notice." *Id.*

## B. Discussion

I denied the plaintiff's prior motion for service by publication without prejudice on the showing made, concluding that, as in *MATSCO v. Brighton Family Dental, P.C.*, 597 F. Supp.2d 158, 162 (D. Me. 2009), the plaintiff had "left avenues unexhausted, falling short of making a sufficient showing of due diligence in attempting to locate each of the five defendants." Prior Decision at 5. I described, as to each defendant, examples of avenues that appeared to have been left unexhausted, *see id*. at 6-11, cautioning that I did "not mean to suggest that specific actions are ironclad prerequisites in an immutable list of steps to be undertaken but, rather, that something more than has been shown must be shown in order to comply with the Law Court's explication of due process in this context[,]" *id*. at 5 (citation and internal punctuation omitted). The plaintiff

3

now offers evidence, in the form of the declaration of one of his attorneys, Benjamin S. Piper, with attachments, that he undertook the steps cited as examples in the Prior Decision.

### 1. Don Patch

In my prior decision I noted that, although the plaintiff had attempted to serve process on Patch at his last known addresses in both Arizona and Maine, he had not pursued avenues such as (i) making additional attempts to confirm that a house in Tucson, Arizona, bearing the name "Patch" on the mailbox was that of Patch and to serve him there, (ii) contacting the water company or other utilities to obtain a billing address, (iii) searching for Patch at the property referenced in the complaint that Patch had offered as security for the plaintiff's investment, (iv) attempting to contact Patch through a telephone number and email address listed in a contract appended to the complaint, the so-called "Success Fee Agreement," or (v) hiring a private investigator. *See* Prior Decision at 8-9. The plaintiff offers evidence that he has since pursued all of those avenues, as follows.

On September 6, 2018, Attorney Piper's assistant engaged private investigators in both Maine and Arizona to attempt to serve Patch. *See* Declaration of Benjamin S. Piper ("Piper Decl.") (ECF No. 43-1), attached to Second Motion, ¶¶ 21-22. Service was attempted on Patch at 30 Burnham Woods, Scarborough, Maine, on three occasions on September 11 and 12, 2018. *Id*. ¶ 21 & Exh. L (ECF No. 43-13) thereto. On the first two occasions, the private investigator observed no activity at the house, but on the third occasion, he spoke with Deb and Steve Malia, Patch's daughter and son-in-law, who informed him that Patch was in Tucson, Arizona, and "RV-ing" throughout the area. *Id*.

The Arizona private investigator searched two private investigator databases and conducted a motor vehicle search, a utilities search, and an employment search. Piper Decl. ¶ 22

& Exh. M (ECF No. 43-14) thereto. Those searches confirmed that Patch resided and had utilities at 1510 W. Beech Way, Tucson, Arizona. *Id*. The investigator also reached Patch's son by telephone, and he confirmed his father's residence at that address. *Id*. A private service processor attempted service at that address on September 14, 16, 18, 22, and 23 and October 2 and 3, 2018, but was unable to determine whether anyone had been at that residence recently. Piper Decl. ¶ 23 & Exh. N (ECF No. 43-15) thereto.

On October 9, 10, and 11, 2018, Attorney Piper attempted to call Patch at the number listed for him in the Success Fee Agreement. Piper Decl. ¶ 24. There was no answer on any of the three occasions, and the call went to a generic voice mailbox that did not identify the recipient. *Id*. On the last two dates, Attorney Piper left voicemails asking that Patch return his call. *Id*. As of October 15, 2018, the date of execution of his declaration, he had not received a response. *Id*.

The plaintiff also emailed Patch at the email address listed in the Success Fee Agreement, copying Attorney Piper, and requested that Patch agree to accept service or provide his residential address. *Id*. ¶ 25. The plaintiff informed Attorney Piper that, as of October 15, 2018, he had not received a response to his email. *Id*.

The property that Patch offered as security for the plaintiff's investment is empty land. *Id*. ¶¶ 26-27 & Exhs. O (ECF No. 43-16) & P (ECF No. 43-17) thereto.

This showing, combined with the efforts detailed in the prior decision, *see* Prior Decision at 8, demonstrates both "due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute" and that, although "[t]he identity and/or physical location of the person to be served . . . is ascertainable[,] . . . it appears the person is evading process[.]" Me. R. Civ. P. 4(g)(1). With respect to the latter point, as the plaintiff observes, *see* Second Motion at 10-11, Patch's daughter and son have both reported that he is in

the Tucson area, his son has confirmed that he resides in the house where the plaintiff repeatedly has tried to serve him, the house contains the name "Patch" on the mailbox, and the utilities are in Patch's name. Yet, three attempts to serve Patch at that residence between May 17 and May 22, 2018, and seven attempts to serve him there between September 14 and October 23, 2018, have been unsuccessful, and Patch has not responded to an email or phone calls.

One issue remains: whether the plaintiff has shown that "[t]he requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1).

The plaintiff proposes to serve Patch through service by publication in the *Arizona Daily Star*, which serves Tucson and the surrounding area, and by leaving service papers at his suspected dwelling. *See* Second Motion at 11. To allow for the possibility that his mail is being held or forwarded, I conclude that first-class mail to Patch's suspected dwellings in both Tucson, Arizona, and Scarborough, Maine is more likely to provide effective notice than leaving service papers at the perhaps-unoccupied Arizona address, and that a combination of publication, first-class mail delivery, and delivery through Patch's last known email address "is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1).

### 2. Russell Hearld and Stellar Enterprises

In my prior decision, I noted that, although the plaintiff had attempted to serve process on Hearld and Stellar at their last known address in Houston, Texas, and at two addresses in Sugar Land, Texas, he had not followed up on leads that included (i) contacting Christopher M. Ochoa, a former attorney for Stellar who was working with Hearld in the disputed dealings,

6

(ii) undertaking a search for Hearld in California, where Hearld's girlfriend indicated that he had lived prior to moving to Texas, (iii) pursuing leads in the forms of names or entities possibly associated with Hearld or Stellar, or (iv) hiring a private investigator. *See* Prior Decision at 10-11. The plaintiff, again, offers evidence that he has pursued those avenues, as follows.

On September 7, 2018, Attorney Piper's assistant provided a private investigator and process server in Houston, Texas, with, *inter alia*, a list of five known addresses the law firm had on file and photographs of Hearld provided by his ex-girlfriend. Piper Decl. ¶ 5. Between September 17 and 20, 2018, the investigator attempted service on Hearld and Stellar at five addresses in Houston and Sugar Land, Texas. Exhs. A (ECF No. 43-2) & B (ECF No. 45) to Piper Decl., ¶¶ 4-10. The resident at one address in Houston indicated that her family resided there and that she had no idea who Hearld or Stellar were. *Id*. ¶ 4. No one answered the door at an address in Sugar Land, and a neighbor said he had not heard of either Hearld or Stellar. *Id*. ¶ 5. On September 17, 2018, an attempt at service was made at a third address, that of Hearld's alleged girlfriend, Meys Ivey, at 6403 Parkriver Crossing in Sugar Land. *Id*. ¶ 6. Two individuals were present, one of whom identified himself as Mr. Ivey and told the investigator that he had no knowledge of Hearld's or Stellar's whereabouts but that Hearld was in Paris the previous month. *Id*. The investigator found an Instagram account for Hearld showing Hearld in Paris with Ms. Ivey in August 2018. *Id*. ¶ 7.

On September 17, 2018, the investigator also attempted service at Ms. Ivey's business, a clothing boutique in Houston, but Ms. Ivey was not present. *Id*. ¶ 8. The investigator phoned the boutique the following day to confirm her presence in the store and was told that she was not available. *Id*. ¶ 9. Twenty-one minutes later, Ms. Ivey called the investigator from a blocked phone number and told him that she did not know Hearld's whereabouts. *Id*.

7

On September 20, 2018, the investigator traveled to a possible fifth address for Hearld in Houston and was informed by the manager of that apartment complex that Hearld had not leased any apartment there. *Id*. ¶ 10.

On October 10, 2018, Attorney Piper phoned Ochoa, who told him that he (Ochoa) had no contact information for Hearld apart from two phone numbers provided in interrogatory responses, and an email address. Piper Decl. ¶¶ 9-11. Attorney Piper called each of those phone numbers on October 3, 10, and 11, 2018. *Id*. ¶ 12. On each occasion, he was routed on one of the lines to a message that the call could not be completed because of restrictions placed on the line, and, on the other line, to a generic voice mailbox that did not identify the recipient. *Id*. He left a voicemail on that line on October 11 requesting that Hearld return his call. *Id*. The plaintiff also emailed Hearld at the email address provided by Ochoa, copying Attorney Piper, and had not received a response as of October 15, 2018. *Id.* ¶ 13.

Attorney Piper also performed a search in the Texas, California, and Wyoming Secretary of State websites of names associated with Hearld or Stellar, followed up on leads obtained from those searches, and arranged for a further attempt at service of process at a newly obtained address in Houston, Texas; however, the private investigator informed Piper that he was unable to locate or serve Hearld at that address. *Id*. ¶¶ 14-18.

Both the Wyoming and Texas Secretary of State websites identified Hearld as associated with R&R Transport Solutions, LLC, and listed Hearld's address as 6403 Parkriver Crossing in Sugar Land, Texas. Piper Decl. ¶ 15 & Exhs. E (ECF No.43-6) & F (ECF No. 43-7) thereto. A different private investigator retained to search for Hearld's most current address and conduct a utility search conducted searches showing that Hearld's current address was 6403 Parkriver

8

Crossing in Sugar Land, Texas, and that he had electricity service in his name at that address. Piper Decl. ¶ 20 & Exhs. J (ECF No. 43-11) & K (ECF No. 43-12) thereto.

On November 5, 2018, with leave of court, ECF Nos. 47-48, the plaintiff filed a declaration of Timothy J. Bryant, Esq., stating that Attorney Bryant had received a phone call on October 17, 2018, from a caller identifying himself as Russell Hearld, who stated that he expected to receive money early during the week of October 22 and to pay the plaintiff in full, Declaration of Timothy J. Bryant ("Bryant Decl.") (ECF No. 49) ¶¶ 2-3. Attorney Bryant informed the caller that any payment would have to be routed from the caller's attorney to this court to be distributed as instructed by the court. *Id*. ¶ 4. The caller promised to have his attorney phone Bryant on October 22. *Id*. ¶ 5. He told Bryant that his attorney's name was Brian Stacy (spelled phonetically), that he did not know how to spell his attorney's first or last name, and that his attorney had offices in California and Texas, but that he was not able to provide a telephone number or address for him. *Id*. ¶¶ 5-6.

Bryant asked the caller whether he would accept service of the complaint in this matter, but he declined to do so without speaking with his attorney. *Id*. ¶ 7. Neither Hearld nor his attorney had contacted Bryant as of November 5, 2018. *Id*. ¶ 9. Bryant conducted an internet search and could not find any website identifying a Brian/Bryan Stacy/Stacey as practicing law in California or Texas. *Id*. ¶ 10.

As in the case of Patch, this showing, combined with the efforts detailed in the Prior Decision, *see* Prior Decision at 10, demonstrates both "due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute" and that, although "[t]he identity and/or physical location of the person to be served . . . is ascertainable[,] . . . it appears the person is evading process." Me. R. Civ. P. 4(g)(1). With respect

to the latter point, as the plaintiff observes, *see* Second Motion at 10, Ms. Ivey and others appear to be covering for Hearld. And, when Attorney Bryant spoke with a caller who identified himself as Hearld, the caller declined to accept service of process without talking to his attorney and identified a possibly fictitious attorney who did not call Attorney Bryant, as promised.

I turn to the final issue: whether the plaintiff has shown that "[t]he requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1). The plaintiff proposes to serve Hearld and Stellar through publication in the *Houston Chronicle*, the largest newspaper in the City of Houston, of which Sugar Land is suburb, and by leaving service papers at Hearld's suspected dwelling house. *See* Second Motion at 11.

Although, from all that appears, Hearld and Stellar already have actual notice of this suit, I conclude that, as in the case of Patch, first-class mail to Hearld's suspected dwelling in Sugar Land, Texas, is more likely to provide effective notice to Hearld and Stellar than leaving service papers at that address, and that a combination of publication, first-class mail delivery, and delivery through Hearld's last known email address "is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1).

### III. Conclusion

For the foregoing reasons, the Second Motion is **GRANTED** as follows:

1. The plaintiff's deadline to serve process is **ENLARGED** by an additional 90 days, to January 14, 2019.

2. The plaintiff is **DIRECTED** to serve process on Patch by (i) publication of the attached order in the *Arizona Daily Star* in accordance with its terms, (ii) mailing service papers,

plus a copy of this memorandum decision and the attached order, by first-class mail to Patch at both 1510 W. Beech Way, Tucson, Arizona, and 30 Burnham Woods, Scarborough, Maine, and (iii) emailing Patch service papers, plus a copy of this memorandum decision and the attached order, at his last known email address, with an electronic request for a delivery receipt, which receipt, if received, shall be filed with the court along with an affidavit showing that the email was sent and delivered.

3. The plaintiff is **DIRECTED** to serve process on Hearld and Stellar by (i) publication of the attached order in the *Houston Chronicle* in accordance with its terms, (ii) mailing service papers, plus a copy of this memorandum decision and the attached order, by first-class mail to Hearld and Stellar at 6403 Parkriver Crossing, Sugar Land, Texas, and (iii) emailing Hearld and Stellar service papers, plus a copy of this memorandum decision and the attached order, at Hearld's last known email address, with an electronic request for a delivery receipt, which receipt, if received, shall be filed with the court along with an affidavit showing that the email was sent and delivered.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 18th day of November 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| | | |
|---|---|---|
| JOHN F. CHASE, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00165-NT |
| | ) | |
| ARTHUR MERSON, et al., | ) | |
| | ) | |
|     Defendants | ) | |


TO DON PATCH:
ORDER FOR SERVICE BY PUBLICATION AND
NOTICE OF CIVIL ACTION

Plaintiff John F. Chase has commenced a civil action against several defendants, including Don Patch. The action, which seeks money damages, is captioned *John F. Chase v. Arthur Merson, et al.*, No. 2:18-cv-00165-NT, and is pending in the United States District Court for the District of Maine, 156 Federal St., Portland, ME 04101.

The plaintiff, who has met the requirements set forth in Maine Rule of Civil Procedure 4(g)(1)(A)-(C) for service by publication, is directed, within 20 days of the date of this Order, to publish this Order for three consecutive weeks in the *Arizona Daily Star* and to mail a copy of this Order as published to Don Patch at his last known address.

You, Don Patch, must appear and serve upon the plaintiff an answer to the complaint or a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure. You must file your answer or motion with the United States District Court for the District of Maine within 42 days after the first publication of this Order in this newspaper, and mail a copy of your answer or motion to the plaintiff through his attorney, Timothy J. Bryant, Esq., Preti Flaherty, One City Center, Portland

ME 04101.  If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint.

**SO ORDERED**.

Dated this 18th day of November 2018.

<u>/s/ John H. Rich III</u>  
John H. Rich III  
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| JOHN F. CHASE,            ) | |
|         Plaintiff     ) | |
| v.                        ) | No. 2:18-cv-00165-NT |
| ARTHUR MERSON, et al.,    ) | |
|         Defendants    ) | |

### TO RUSSELL HEARLD AND STELLAR ENTERPRISES, INC.:
### ORDER FOR SERVICE BY PUBLICATION AND
### NOTICE OF CIVIL ACTION

Plaintiff John F. Chase has commenced a civil action against several defendants, including Russell Hearld and Stellar Enterprises, Inc. The action, which seeks money damages, is captioned *John F. Chase v. Arthur Merson, et al.*, No. 2:18-cv-00165-NT, and is pending in the United States District Court for the District of Maine, 156 Federal St., Portland, ME 04101.

The plaintiff, who has met the requirements set forth in Maine Rule of Civil Procedure 4(g)(1)(A)-(C) for service by publication, is directed, within 20 days of the date of this Order, to publish this Order for three consecutive weeks in the *Houston Chronicle* and to mail a copy of this Order as published to Russell Hearld and Stellar Enterprises, Inc., at Hearld's last known address.

You, Russell Hearld and Stellar Enterprises, Inc., must appear and serve upon the plaintiff an answer to the complaint or a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure. You must file your answer or motion with the United States District Court for the District of Maine within 42 days after the first publication of this Order in this newspaper, and mail a copy of your answer or motion to the plaintiff through his attorney, Timothy J. Bryant, Esq., Preti Flaherty, One

City Center, Portland ME 04101. If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint.

**SO ORDERED**.

Dated this 18th day of November 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge