UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN F. CHASE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00165-NT |
| | ) | **FILED UNDER SEAL** |
| ARTHUR MERSON, et al., | ) | **(UNSEALED 01/25/2019)** |
| | ) | |
| Defendants | ) | |

***AMENDED MEMORANDUM DECISION ON MOTION FOR EX PARTE ATTACHMENT[1]***

The plaintiff seeks an *ex parte* attachment against the property of each of the defendants in the amount of $500,000, the sum that he alleges he lost as the result of a fraudulent investment scheme. *See* Plaintiff's *Ex Parte* Motion for Attachment on Trustee Process ("Motion") (ECF No. 3) at 1-2. For the reasons that follow, the Motion is denied without prejudice on the showing made.

## I. Applicable Legal Standard

This court applies Maine law pertaining to the seizure of "a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a).[2] The plaintiff states that he seeks *ex parte* attachment on trustee process, *see* Motion at 1, which is governed by Maine Rule of Civil Procedure 4B, but cites Maine Rule of Civil Procedure 4A, *see id.* at 2-3, 11, which pertains to attachment of "real estate, goods and chattels and other property[,]" Me. R. Civ. P. 4A(a). For purposes of disposition of the instant motion, there is no substantive difference: with immaterial wording differences, the showing required for the grant of an *ex parte* attachment pursuant to Rule

---

[1] This decision supersedes a May 18, 2018, decision (ECF No. 9) that I vacated by order dated May 25, 2018 (ECF No. 11) because it incorrectly stated that no affidavit had been filed with the plaintiff's motion. The plaintiff had, in fact, provided an affidavit; however, as the result of a clerical error, it had not been docketed on CM-ECF. The affidavit since has been docketed as ECF No. 10. Yet, as set forth more fully herein, with the benefit of review of the affidavit, I conclude that the plaintiff continues to fall short of making the showing necessary to warrant an *ex parte* attachment.

[2] "[A] federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a). However, the plaintiff invokes Maine law as the basis for attachment. *See* Motion at 2-3.

1

4A and Rule 4B is identical. *Compare* Me. R. Civ. P 4A(g) *with* Me. R. Civ. P. 4B(i). Therefore, I set forth only the pertinent text of Rule 4A.

Rule 4A provides that, to grant a motion for attachment on an *ex parte* basis, the court must find that:

> it is more likely than not that the plaintiff will recover judgment in an amount equal to or greater than the aggregate sum of the attachment and any insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process known or reasonably believed to be available to satisfy the judgment, and that either (i) there is a clear danger that the defendant if notified in advance of attachment of the property will remove it from the state or will conceal it or will otherwise make it unavailable to satisfy a judgment, or (ii) there is immediate danger that the defendant will damage or destroy the property to be attached.

Me. R. Civ. P. 4A(g). Rule 4A further provides:

> The motion for such ex parte order shall be accompanied by a certificate by the plaintiff's attorney of the amount of any insurance, bond, or other security, and any other attachment or trustee process which the attorney knows or has reason to believe will be available to satisfy any judgment against the defendant in the action. The motion, in the filing of which the plaintiff's attorney shall be subject to the obligations of Rule 11, shall be supported by affidavit or affidavits meeting the requirements set forth in subdivision (i) of this rule.

*Id*. Pursuant to subdivision (i), affidavits must "set forth specific facts sufficient to warrant the required findings and . . . be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that the affiant believes this information to be true." Me. R. Civ. P. 4A(i).

The plaintiff supplies both a certificate of his attorney, *see* Motion at 11, and an affidavit, *see* Affidavit of John F. Chase ("Chase Aff.") (ECF No. 10).

## II. Discussion

### A. Factual Background

The plaintiff alleges that:

1. The defendants "fraudulently induced [him] to participate in an investment opportunity which [they] falsely represented would yield substantial returns with little-to-no-risk[,]" specifically, that "for every $250,000 [the plaintiff] invested in certain standby letters of credit, he would receive $10,000,000 within 7-12 days." Complaint (ECF No. 1) at 2; *see also* Chase Aff. ¶¶ 2-33.

2. The defendants' "misrepresentations were intended to induce [the plaintiff] to part with his money by wiring funds to a participant in the fraudulent scheme[,]" and he "in fact relied on [their] fraudulent representations and assurances and invested $500,000 of his money in the purported standby letter of credit transactions." Complaint at 2; *see also* Chase Aff. ¶¶ 8-26.

3. "Contrary to the [d]efendants' representations, [the plaintiff] did not receive the promised returns or even a return of any portion of his initial investment." Complaint at 2; *see also* Chase Aff. ¶¶ 28-33.

4. The defendants' scheme to defraud the plaintiff was "part of a wider pattern and practice by [the] [d]efendants that they have carried out on a nationwide scale[,]" constituting "violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, Maine common law torts, and breach of contract." Complaint at 2; *see also* Chase Aff. ¶¶ 34-40.

As relevant here, the plaintiff asserts that:

1. On March 29, 2017, in accordance with two standby letter of credit agreements, he transferred the sum of $500,000 to his attorney, who transferred it to the IOLTA trust account of defendant Law Office of Chris Ochoa P.A. ("Law Office"). *See* Chase Aff. ¶¶ 25-26.

2. Shortly thereafter, defendant Christopher M. Ochoa informed him that the two letters of credit had been issued but did not provide formal confirmation of their transmission as required by the agreements, and still has not done so. *See id*. ¶ 27.

3. The plaintiff has not been paid the required return on his investment. *See id*. ¶ 28.

4. The plaintiff and his attorney were repeatedly told by defendants Ochoa and Arthur Merson from May 2017 through August 2017 that payment would be coming soon. *See id*. ¶ 30.

5. Defendant Ochoa stopped communicating with the plaintiff after August 2017, and defendant Merson continued to state through the winter of 2018 that payment would be coming any day. *See id*. ¶ 31.

6. The plaintiff has made demands to defendants Merson and Ochoa for the return of his $500,000 investment, but, despite defendant Merson's assurances that it is forthcoming, no portion of those funds has been returned. *See id*. ¶ 32.

7. In November 2017, the plaintiff filed a complaint with the Florida Bar against defendant Ochoa. *See id*. ¶ 34. In connection therewith, defendant Ochoa produced documents showing that the plaintiff's funds were immediately disbursed on receipt on March 29, 2017. *See id*. ¶ 35. The defendant Law Office's IOLTA account had a balance of $6,230 prior to the receipt of the plaintiff's $500,000 wire, which brought the balance to $506,230, the vast majority of which was disbursed the same day to a separate bank account of the defendant Law Office, The Caswell Group, Hearld Trade, and Anderson Law. *See id*. ¶ 36.

8. Through the Florida Bar proceedings, the plaintiff learned that at least defendants Merson, Ochoa, and Russell Hearld had perpetrated their standby letter of credit scheme against other victims. *See id*. ¶ 38. A February 6, 2018, report of the referee for the Florida Bar recommending the disbarment of defendant Ochoa described a standby letter of credit scheme

perpetrated against Frank K. Wheaton and IntraGlobal Consulting Group, LLC, that was nearly identical to the scheme perpetrated against the plaintiff. *See id*. ¶ 39. Defendant Merson has told the plaintiff that a number of other investors in the standby letter of credit transaction have not received their funds, and some have initiated civil actions or criminal investigations. *See id*. ¶ 40.

### B. Discussion

The plaintiff contends that an *ex parte* attachment is appropriate because facts discussed in the section of his motion addressing his likelihood of success on the merits of his claims "establish[] that [the] [d]efendants have little regard for the law or [his] rightful property." Motion at 11. He argues that, "[b]ecause the [d]efendants swindled [him] and have since eluded his efforts to recover his funds, it is clear that [they] if notified in advance of attachment of their property would attempt to make it unavailable for judgment." *Id*.; *see also id*. at 3-11.

This showing does not suffice to justify the extraordinary remedy of *ex parte* attachment.

First, the plaintiff identifies no specific property or assets that he wishes to attach, rendering it difficult to assess whether "there is a clear danger that the defendant[s] if notified in advance of attachment of the property will remove it from the state or will conceal it or will otherwise make it unavailable to satisfy a judgment[.]" Me. R. Civ. P. 4A(g).

Second, the plaintiff fails to set forth specific facts demonstrating a "clear danger" that any of the defendants will make property unavailable if notified in advance of his bid to attach it. Instead, he relies on the presupposition that past is prologue, contending that, because the defendants defrauded him, absconded with his funds, and failed to return them upon demand, and at least three of the 10 defendants have perpetrated this scheme against other victims, the defendants can be expected (collectively or individually) to make their property unavailable to be attached.

As this court has previously held, assumptions of this kind are too thin a reed on which to predicate an *ex parte* attachment. *See, e.g., De Lage Landen Fin. Servs., Inc. v. Tri State Crane Rental Corp.*, No. 2:12-cv-44-DBH, 2012 WL 484244, at *3 (D. Me. Feb. 13, 2012) (denying motion for *ex parte* attachment when plaintiff offered "nothing beyond an assumption that, because two of the defendants put the plaintiff's collateral beyond its reach, all of the defendants will do something similar with whatever assets they have when they become aware of this action"); *Clough v. Presnall*, No. 2:12-cv-54-DBH, 2012 WL 476384, at *1-2 (D. Me. Feb. 13, 2012) (rejecting plaintiff's argument that individual defendant's planned nuptials, combined with the fact that he had moved the corporate co-defendant to three states in three years, justified an *ex parte* attachment; noting, "a plaintiff-affiant's personal belief that the defendants will act to make otherwise attachable assets unavailable, without more, is insufficient to meet the 'clear danger' prong of the *ex parte* rule"); *Rockport Whale Watch, Inc. v. Hawley*, No. 07-148-P-H, 2007 WL 4531714, at *2 (D. Me. Dec. 18, 2007) (denying motion for *ex parte* attachment premised on plaintiff's assumption that defendants' past willingness to "strip" a company they owned of its assets indicated they would do the same with real estate and boat plaintiff sought to attach); *Carlson v. Rice*, 817 F. Supp. 193, 194 (D. Me. 1993) (denying motion for *ex parte* attachment predicated on plaintiff's unsubstantiated belief that defendants would make property unavailable for judgment; noting, "unlike [in] *Herrick* [*v. Theberge*, 474 A.2d 870 (Me. 1984)], in the case at bar, there is no evidence that Defendants have begun to liquidate their holdings, nor is there any direct or circumstantial evidence that Defendants will likely try to do so").[3]

---

[3] In *Herrick*, the Law Court found no reversible error in the grant of an *ex parte* attachment when, "[g]iven the size of plaintiffs' damage claims and the attempted sale of one house by defendants, the Superior Court justices were justified in concluding that defendants, if notified of an impending attachment, might well sell some of their property and make it unavailable to satisfy a judgment." *Herrick*, 474 A.2d at 875-76. The plaintiffs had submitted an affidavit describing "the anonymous advertisement of one piece of defendants' real estate[.]" *Id*. at 875.

6

### III. Conclusion

For the foregoing reasons, the Motion is **DENIED** without prejudice on the showing made.

Dated this 1st day of June, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge