**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| JOHN F. CHASE, | ) | |
| | ) | |
|               PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL NO. 2:18-CV-165-DBH |
| | ) | |
| ARTHUR MERSON, ET AL., | ) | |
| | ) | |
|               DEFENDANTS | ) | |

**DECISION AND ORDER ON CLOUTIER DEFENDANTS'
MOTION TO DISMISS**

The plaintiff filed this federal lawsuit alleging RICO violations, breach of contract, fraudulent inducement, negligent misrepresentation, conversion, and unfair trade practices against a number of defendants. Pl.'s Compl. at 16-23 (ECF No. 1). In general, he alleges that certain defendants fraudulently told him that for every $250,000 he invested in standby letters of credit, he would obtain a return of approximately $10,000,000 within 7 to 12 days. Id. at 1. He invested $500,000, and lost it all.

He has sued several of the defendants in Count IV for breach of contract based upon an "Irrevocable 17.5% Success Fee Participation & Payorder Agreement" that he attaches to his Complaint. Ex. 1 (ECF No. 1-1.) Two of those defendants, Mark Cloutier and Robert Cloutier, have moved to dismiss the

plaintiff's claim against them, which is limited to that asserted breach of contract.[1] Defs.' Mot. at 3 (ECF No. 61). I **GRANT** the motion.[2]

With respect to the Cloutier defendants and the alleged breach of contract, the Complaint states:

### III. The Irrevocable 17.5% Success Fee Participation & Payorder Agreement

> 32. Defendants Merson and Roy explained to Attorney Abbondanza [the plaintiff's lawyer] that in exchange for introducing Mr. Chase to the opportunity, they, Endeavor Project Consultants, and Defendants Patch, Mark Cloutier, and Robert Cloutier (collectively, the "Consultants") would require a collective fee equal to 17.5% of Mr. Chase's proceeds from the transaction.
>
> 33. The Consultants in late March 2017 presented Mr. Chase with an Irrevocable 17.5% Success Fee Participation & Payorder Agreement (the "Success Fee Agreement"), which they said memorialized their entitlement to a collective 17.5% fee for introducing Mr. Chase to the standby letter of credit opportunity. *See* Success Fee Agreement, attached as **Exhibit 1**.
>
> 34. The Success Fee Agreement stated that "All payments hereunder shall be made pursuant to the above transaction via S.W.I.F.T., or other appropriate and direct wire of funds transfer mechanism . . . ."
>
> 35. The Success Fee Agreement further provided that Defendant Patch would sign a note and mortgage in the amount of $250,000 secured by real estate he owned in Arizona. In fact, Mr. Patch's real estate in Arizona was worth only approximately $110,000.
>
> 36. Mr. Chase and the Consultants entered the Success Fee Agreement on March 29, 2017.

Pl.'s Compl. at 7-8.

---

[1] The plaintiff has not asserted any of the other claims against the Cloutier defendants.
[2] Under the applicable standard of review for a Rule 12(b)(6) motion, I can consider the documents attached to the complaint without converting the 12(b)(6) motion to one for summary judgment. See, e.g., Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 73 (1st Cir. 2014).

## COUNT IV
## BREACH OF CONTRACT
## (Defendants Merson, Endeavor Project Consultants, LLC, Roy, Patch, Mark Cloutier, and Robert Cloutier

> 128. Mr. Chase repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.
>
> 129. On March 29, 2017, Mr. Chase and the Consultants entered the Success Fee Agreement.
>
> 130. The purpose of that agreement was for the Consultants to introduce Mr. Chase to individuals who would facilitate a lucrative and low-risk standby letter of credit investment in exchange for Mr. Chase's payment of a fee to the Consultants.
>
> 131. The Consultants breached the Success Fee Agreement by failing to place Mr. Chase with the type of investment opportunity they had promised.
>
> 132. The Consultants placed Mr. Chase with an investment which, upon information and belief, each Consultant knew was part of a fraudulent scheme that would deprive Mr. Chase of a return of even his initial investment.
>
> 133. As a result of the Consultant's breach of the Success Fee Agreement, Mr. Chase suffered significant financial loss.

Pl.'s Compl. at 20-21.

The contract upon which the plaintiff bases his claims against the Cloutier defendants also calls itself a "Profit Participation, Non-Circumvention, Non-Disclosure & Working Agreement." Ex. 1 at 1. It is a bizarre document, with several nonsensical provisions. It states: "The purpose of this instrument is to establish an internationally recognized Non-Circumvention Non-Disclosure, and working Agreement between the participating Parties. This and future transactions shall be conducted under the guidelines of the International

Chamber of Commerce."[3] Id. ¶ 11. It purports to be governed by both "the Laws of the United States of America and the United Kingdom." Id. ¶ 22. Its preamble states that it "encompasses any and all introductions; parties present and future, made by Mr. Arthur Merson, his Associates listed below, and any business they engage in or contract with as a consultant, asset manager or joint venture partner for the financial profit of or with: John Chase (client)." Id. at 2. The document imposes on all parties a duty not to obtain additional business from sources made available under the agreement; to maintain complete confidentiality; not to disclose contacts or enter into transactions with such contacts; and to "not in any way what so ever circumvent each other and/or attempt such circumvention of each other and/or any of the parties involved in any of the transactions the parties wish to enter and to the best and proprietary information established are not altered [sic]." Id. ¶¶ 1-6. Central to the contract is that the plaintiff, John Chase, "agrees to pay Consultants the agreed upon percentage of 17.5% (SEVENTEEN AND ONE-HALF PERCENT) of each payout from Private Placement Profits." Id. ¶ 28. But he "is under no obligation whatsoever, at any time under this Agreement, to pay TRADER REPRESENTATIVES[4] any money, funds, fees, or compensation of any kind unless and until Proceeds in the amount of 20MM are generated" (an event that never happened). Id. at 2. The defendant Cloutiers were each to receive 3.375% as their share of any such fee payments Chase made. Id. at 1-2. The contract also had an integration clause: "All of the terms and conditions of this Agreement

---

[3] The contract provides for binding arbitration, but no party has invoked that provision. Ex. 1 ¶ 7 (ECF No. 1-1).
[4] This is not a defined term.

between the parties are contained herein and no representations or inducements have been made other than those specifically set forth." Id. ¶ 27.

The plaintiff is unable to point to any specific provision of the contract that the Cloutier defendants breached. Instead, he says: "It is true that the Success Fee Agreement does not explicitly require the Cloutiers to do anything for Chase in exchange for his agreement to pay each of them . . . ." Pl.'s Opp'n at 3 (ECF No. 76).

Nevertheless, the plaintiff says that he needs extrinsic evidence to find contractual obligations on the part of the Cloutier defendants, id., and speculates that all the Consultants, including the Cloutier defendants, were obliged to provide him "a $500,000 investment that would return $20,000,000," id. at 5, and that the existence of the Cloutier defendants' obligation "is a reasonable inference," id. at 6, and a "plausible" reading of the Agreement, id. at 7. He points to nothing in the document that imposes this obligation on the Cloutier defendants, but he says: "Why else would the Consultants—including the Cloutiers—be in line to get paid?" Id. at 5. In his Complaint, the plaintiff asserts that the agreement's "purpose"[5] was for the Consultants to place the plaintiff with a lucrative and low-risk investment; and that the Cloutiers breached the agreement by placing him with an investment they "knew was part of a fraudulent scheme." Pl.'s Compl. ¶¶ 130-32. Contradictorily, the plaintiff

---

[5] The document does have a purpose clause, but it is nothing like what the plaintiff asserts. It states: "The purpose of this instrument is to establish an internationally recognized Non-Circumvention Non-Disclosure, and working Agreement between the participating Parties. This and future transactions shall be conducted under the guidelines of the International Chamber of Commerce." Id. ¶ 11.

5

also states that he "does not yet have a good faith basis for accusing [the Cloutiers] of fraud or racketeering." Pl.'s Opp'n at 2.

In sum, he provides no explanation for the Cloutiers' role in the agreement, including whether they are third-party beneficiaries or more active participants. Instead, he states more than once that he "had no interactions with [the Cloutier defendants] in the course of his dealings with the other defendants," id. at 2, 6. He hints that with discovery he might be able to accuse them of fraud and racketeering, id. at 6, 8, but that remains speculation. In actuality, there is no ambiguity in the document about the Cloutier defendants' obligations. Aside from the covenants *not* to do certain things, there are no positive obligations, although the plaintiff would like to find some.

Obviously, the plaintiff is frustrated in his inability to define what role, if any, the Cloutiers played in the scheme to which he fell victim. But he simply does not have enough to claim a breach of this contract under federal pleading standards. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal citations and quotations omitted). The Cloutier defendants are therefore entitled to have the contract claim against them dismissed. I express no view on whether the plaintiff will learn enough from discovery against other defendants to justify bringing the Cloutier defendants back into the lawsuit on some basis.

The Cloutier defendants also are entitled under the clear language of the Success Fee Agreement to have their legal fees paid. The Agreement states: "In the event that either party institutes mediation or [l]egal action for the

enforcement of any right[,] obligation, provision, or covenant of this Agreement, the prevailing party shall be entitled to a reasonable attorney's fee in addition to costs of suit." Ex. 1 ¶ 23.  The plaintiff argues that if I dismiss his contract-based lawsuit against the Cloutiers, that means "that the contract is illusory, and thus not binding on either party," Pl.'s Opp'n at 9, and therefore that the attorney fee provision cannot be enforced.  That conclusion does not follow.  The fact that the plaintiff cannot show that the Cloutiers breached the contract does not mean that the attorney fee provision is unenforceable.  I therefore **GRANT** the request for reasonable attorney fees.  The application shall be made in accordance with Local Rule 54.2.

**SO ORDERED.**

**DATED THIS 6TH DAY OF FEBRUARY, 2019**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**